IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re Show Cause Order Dated November 17, 2021 | Civil Action No. 8:21-cv-03209-PX |

## MEMORANDUM OPINION

The Office of Personnel Management ("OPM") moves to dismiss the action commenced when the Circuit Court for Calvert County ordered the agency to show cause why it should not be held in contempt for failure to issue retirement benefits consistent with court-ordered division of marital property. ECF No. 11. Finding no hearing necessary, *see* Loc. R. 105.6, and for the following reasons, the motion to dismiss is GRANTED.

**I.    Background**

Heidi Lee and Elmer Stone were married in 1991 and divorced in 2015. ECF No. 12 at 30; 1-1 at 38–39. This was Elmer Stone's second marriage. *See* ECF No. 18-1. As part of his divorce from Lee, the couple executed a Voluntary Separation and Property Settlement Agreement ("Settlement Agreement"), which guaranteed that Lee would receive 50% of Stone's federal retirement benefits.[1] ECF No. 12 at 37. Also as part of the Settlement Agreement, Lee was responsible for filing with OPM what is known as a Qualified Domestic Relations Order ("QDRO"), a necessary precondition to OPM awarding benefits to her as part of the divorce

---

[1] The Settlement Agreement specified that Lee would receive 50% of Stone's self-only annuity based on the total number of months Stone was in the retirement plan during the marriage. ECF No. 12 at 36–38.

settlement.  ECF No. 12 at 37.

In 2015, the Calvert County Circuit Court issued a Judgement of Absolute Divorce which incorporated the Settlement Agreement in full.  ECF No. 12 at 28.  The Circuit Court, however, had not issued any order specific to the disbursement of Stone's retirement benefits.  Years later, Stone retired and filed with OPM an application to receive retirement benefits.  ECF Nos. 1-1 at 9; 12 at 5.  Lee also applied to receive her share of the benefits per the Settlement Agreement.  *See* ECF No. 1-1 at 14.  But because OPM had never received the QDRO, OPM simply awarded to Lee the maximum survivor annuity payment of $2,700 per month.  ECF No. 12 at 18.

Stone requested OPM reconsider its decision, underscoring that per the Settlement Agreement, Lee was responsible for obtaining a QDRO.  ECF No. 1-1 at 12–13.  While Stone's request was pending, OPM recalculated Lee's monthly annuity payments at $1,200.47 plus a pro rata share of the survivor benefits.  ECF No. 1-1 at 14; *see also* ECF No. 12 at 5–8.  But shortly after, OPM rescinded the decision awarding benefits to Lee and issued a new decision explaining that no benefits would be paid to her until she submitted a QDRO.  ECF Nos. 1-1 at 16–21; 12 at 9–14.

Stone, for his part, was dissatisfied with OPM's projected retirement benefits more generally, and so requested reconsideration of OPM's decision as to the allocation of his annuity.  ECF No. 1-1 at 22–24; *see also* ECF No. 12 at 5.  The Legal Reconsideration and Appeals Division affirmed OPM's decision and alerted Stone to his right of appeal to the Merit Systems Protection Board ("MSPB").  ECF Nos. 1-1 at 25–28; 12 at 5–8.  Stone appealed to the MSPB. ECF No. 11–3 at 2.

While that appeal was pending, Lee and Stone obtained a "Court Order Acceptable for Processing (FERS)" from the Calvert County Circuit Court which memorialized the allocation of

his retirement benefits ("the COAP").  ECF Nos. 1-1 at 29–33; 11-2 at 4–8.  Once OPM received the COAP, the agency decided to "take another look at" the issues that Stone had raised in his appeal to the MSPB, and so OPM rescinded its benefits decision, prompting the MSPB to dismiss Stone's appeal.  ECF No. 11-3 at 1–3.

Thereafter, Stone filed a second appeal with the MSPB, even though no subsequent OPM decision had issued.  *See* ECF No. 11-4 at 2.  In response, the MSPB issued a show cause order as to why the appeal should not be dismissed as premature.  *Id.* at 3.  Stone failed to respond, and the MSPB dismissed the second appeal.  *Id.*

Lee and Stone next returned to Calvert County Circuit Court.  There, they moved for the Circuit Court to hold OPM in contempt for failing to follow the COAP.  *Stone v. Stone*, No. 04-C-14-001350, Maryland Judiciary Case Search https://casesearch.courts.state.md.us/casesearch/ (under "Search By Case Number," select "Calvert County Circuit Court" and enter case number 04-C-14-001350 (last visited July 5, 2022)); ECF No. 1-1 at 4–8.  The Circuit Court, in response, ordered OPM to show cause why the motion should not be granted.  ECF No. 1-1 at 1.

Accordingly, the Circuit Court's show cause order against OPM, as an agency of the United States, triggered this Court's removal jurisdiction.  *See* 28 U.S.C. § 1442(a)(1) ("A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof . . ."); *see also, e.g.*, *In re Show Cause Order Dated December 15, 2017*, No. TDC-18-0128, 2018 WL 3880289, at *1 (D. Md. Aug. 15, 2018) (exercising jurisdiction over show cause order issued by the Circuit Court for Montgomery County against National Transportation Safety Board); *In re "Order to Show Cause Why Social Security Administration*

*Should Not be Held in Contempt for Failure to Comply With This Court's Order Dated October 19, 2006"*, No. 07-60178CIV, 2007 WL 2077632, at *1–2 (S.D. Fla. July 13, 2007) (exercising jurisdiction over show cause orders issued by state court to Social Security Administration).

OPM next moved to dismiss the contempt action, arguing that because the Federal Employees' Retirement System Act of 1986 ("FERS"), 5 U.S.C. §§ 8401 *et seq.* and the Civil Service Reform Act of 1978 ("CSRA"), Pub. Law. 95–454, 92 Stat. 1111 (1978), *see* 5 U.S.C. §§ 8331 *et seq.*, provide the exclusive remedial scheme for challenging benefits awards, and because the contempt action effectively seeks to compel an OPM award of benefits, the action against the agency must be dismissed for lack of subject matter jurisdiction. ECF Nos. 1, 11.[2] For the following reasons, the Court agrees with OPM.

## II.     Analysis

The Court reviews OPM's motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because it must decide whether the action belongs "in the district court at all and whether the court has the power to hear and dispose of his claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). Although the general removal statute, 28 U.S.C. § 1442(a)(1), permits the matter to be in this Court, the Court's jurisdiction extends "only as far as the state court's jurisdiction." *L. Off. of Mark Kotlarsky Pension Plan v. Hillman*, No. TDC-14-3028, 2015 WL 5021399, at *6 (D. Md. Aug. 21, 2015) (citing *Palmer v. City Nat'l Bank of W. Virginia*, 498 F.3d 236, 244 (4th Cir. 2007)). Accordingly, if the Calvert County Circuit Court lacks jurisdiction at the time of removal, so too does this Court. *See Palmer*, 498 F.3d at 244; *see also Robinson v. Dep't of Justice*, No. RWT-13-1945, 2014 WL

---

[2] On March 24, 2022, while the motion to dismiss was pending, OPM informed Stone that until the allocation of benefits to his *first* wife is finalized, the agency cannot issue a final decision as to Lee's benefits. ECF No. 18-1 at 1. OPM, however, has refrained from issuing a final decision pending the resolution of this motion to avoid the possibility of "inconsistent judgments." ECF No. 11-1 at 5.

4

1255863, at *4 (D. Md. Mar. 25, 2014) ("If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none.").

Importantly, the parties agree that the FERS and CSRA together provide the exclusive adjudicatory process related to OPM's disbursement of retirement benefits. Congress, in enacting this exclusive remedial scheme, sought to "ensure fair and consistent results for all employees." *Eisenbeiser v. Chertoff*, 448 F. Supp. 2d 106, 112 (D.D.C. 2006). It thus made plain that OPM, not the courts, "shall adjudicate *all* claims" related to the provision of retirement benefits. *See* 5 U.S.C. § 8461(c) (emphasis added). If a claimant is dissatisfied with OPM's benefits decision, then the claimant may appeal the decision to the MSPB, and next to the Federal Circuit. *Id.* §§ 8461(e)(1); 8347(b), (d)(1); *see also* 5 U.S.C. § 7703(b)(1). No authority vests power in any other court to address when or how OPM awards federal benefits.

To date, OPM has yet to issue a final decision on the allocation of Stone's benefits. *See* ECF No. 18-1. Stone and Lee, understandably impatient, filed their contempt motion effectively to force OPM to make a decision, and to make the allocation consistent with the COAP. ECF No. 1-1 at 7 ("The parties are jointly requesting that [OPM] be found in contempt due to its failure to properly process and to implement" the Circuit Court order related to Stone's retirement benefits). But pursuant to FERS and CSRA, only OPM retains that power, and so the Circuit Court lacked authority to order OPM to reach an award decision at all, let alone one in line with the COAP. *See, e.g.*, *Lindahl v. OPM*, 470 U.S. 768, 772–75 (1985) (The CSRA "comprehensively overhauled the civil service system . . . OPM . . . is now responsible for administering the Retirement Act."); *Keiger v. Sachon*, No. JKB-10-1556, 2011 WL 1213115, at *2 (D. Md. Mar. 30, 2011) ("Authority to administer the CSRA is vested exclusively in OPM."); *see also Lampon-Paz v. OPM*, 732 F. App'x 158, 159 (3d Cir. 2018) (per curiam) ("The CSRA

5

requires the OPM to administer its provisions."); *cf. Fornaro v. James*, 416 F.3d 63, 64 (D.C. Cir. 2005) ("Congress has entrusted the administration of this [federal benefits] system to the Office of Personnel Management."). By extension, this Court lacks jurisdiction to review the claim. *See Palmer*, 498 F.3d at 244–48.

In response, Stone and Lee argue that the federal courts certainly retain the power under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) & 706(l) to force OPM to make its decision. ECF No. 13 at 1, 5. This position is untenable. The Mandamus Act permits the Court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," but only when no other remedy in law exists. *See* 28 U.S.C. § 1361; *see also Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989); *Johnson v. Session*, No. RDB-15-3317, 2017 WL 1207537, at *6 (D. Md. Apr. 3, 2017). Lee and Stone cannot reach this high bar because Congress has robustly provided for a remedy in the FERS and CSRA. Neither logic nor the law authorizes this Court to issue a mandamus order in contravention of the exclusive statutory scheme concerning award of federal benefits. *See Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 506 (4th Cir. 1999) (noting that Mandamus Act's grant of jurisdiction would not override specific statute's jurisdiction stripping provision); *see also Awah v. Holder*, No. RWT-09-cv-1732, 2010 WL 2572848, at *5 (D. Md. June 23, 2010) ("[T]he Mandamus Act, like the APA, does not supersede a specific statutory bar to jurisdiction."); *Yahya v. Barr*, No. 20-cv-01150, 2021 WL 798873, at *2 (E.D. Va. Jan. 19, 2021) ("The Mandamus Act does contain a grant of jurisdiction, but that grant may not override jurisdiction stripping provisions from other statutes.").

Nor does the APA permit judicial review for claims expressly or implicitly foreclosed by

another federal statute. Indeed, section 702(2) of the APA makes plain that "nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702(2); *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (The APA "does not provide additional judicial remedies in situations where Congress has provided special and adequate review procedures."). Because FERS and CSRA provides the exclusive path to dispute the disbursement of Stone's retirement benefits, this Court may not review the decision pursuant to the APA.

In sum, because "an available, exclusive remedy under the OPM/MSPB/Federal Circuit scheme" has been established, *Eisenbeiser*, 448 F. Supp. 2d 106, neither the Calvert County Circuit Court nor this Court can commence contempt proceedings in connection with OPM's decisional process. Accordingly, OPM's motion to dismiss (ECF No. 11) is GRANTED.

A separate Order follows.

July 11, 2022  /S/
Date  Paula Xinis
  United States District Judge